**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MICHAEL YOSHONIS, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| THE COCA-COLA COMPANY, a Delaware corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Yoshonis ("Yoshonis" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant The Coca-Cola Company ("Coca-Cola" or "Defendant") to stop its practice of making unsolicited autodialed and/or pre-recorded calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

### NATURE OF THE ACTION

1.      Defendant Coca-Cola is the world's largest beverage company. Coca-Cola owns and markets four of the world's top five nonalcoholic sparkling beverage brands, and its products are sold in more than 200 countries.

2.      Coca-Cola branded beverage products are available to consumers throughout the world through a network of company-owned or controlled bottling and distribution operations as well as independently owned bottling partners, distributors, wholesalers and retailers. Together, these entities compromise the world's largest beverage distribution system.

1

3.      Unfortunately for consumers, Defendant Coca-Cola casts its marketing net too wide. That is, in an attempt to promote its business and to generate sales of its beverages Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

5.      The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6.      Plaintiff Michael Yoshonis is a natural person and citizen of the State of Michigan. Plaintiff resides in Oakland County, Michigan.

7.      Defendant The Coca-Cola Company is a corporation incorporated and existing

2

under the laws of the Delaware with its headquarters located at One Coca-Cola Plaza, Atlanta, Georgia 30313. Defendant Coca-Cola is registered to conduct business with the Michigan Secretary of State as entity number 610315. Defendant Coca-Cola conducts business throughout this District, the State of Michigan, and the United States.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute.

9.     The Court has personal jurisdiction over Defendant because it is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, has entered into business to business contracts in this District, and the unlawful conduct alleged in this Complaint occurred in, was districted to, and/or emanated from this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was districted to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

11.     Defendant Coca-Cola distributes beverages to consumers and other entities through a variety of channels. Unfortunately for consumers, Coca-Cola promotes its business by placing unsolicited autodialed and/or pre-recorded calls to consumers without their express written consent, and often times in violation of the National Do Not Call Registry and the

consumer's attempts to opt out of any future telemarketing calls.

12.     To make matters worse, Defendant calls these consumers on their cellular telephones using an "automatic telephone dialing system" ("ATDS") without their prior written express consent in violation of the TCPA.

13.     Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

14.     Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

15.     Not surprisingly, these practices have led to significant complaints from consumers, which can be found quickly on the Internet. For example, consumers have publicly complained that:

- I have no account with Coke, so why are they calling me?[1]

- I do not have an account with them nor have I ever placed an order with them. We have never even served cokes or any other soda in our business. So I don't know how they got our #, or why they called. Very annoying![2]

- I got a call from the number and didn't answer it, and I definitely have nothing to do with ordering coca cola for anyone at any time.[3]

- I received a call from them this morning, didn't answer because I didn't recognize it. I have nothing to do with Coca-Cola if this is them calling, I'm not in marketing, I don't process the orders at work, don't know how they got my cell phone number![4]

- They leave mulitple [sic] voice message and their toll-free number and when you call back it's an auto attendant that leaves you on automatic hold and in cue waiting.  We do not do business with this company and asked them to put us on their DO NOT CALL LIST.[5]

---

[1] http://800notes.com/Phone.aspx/1-678-320-1700
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

- Coca-Cola calling for our beverage order.[6]

- received a call from number above Coca Cola , wanted to know if we need machines in our rec room.[7]

16.     At no time did Defendant obtain prior express consent from the Plaintiff and the Class orally or in writing to receive autodialed calls. Also, at no time did Defendant obtain prior express consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive autodialed calls was not a condition of the purchase of any property or service.

17.     In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

18.     Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

---

[6] http://800notes.com/Phone.aspx/1-800-647-2653
[7] http://www.spokeo.com/678-320-telemarketers

19.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

20.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers as the consent standards differ depending on what type of phone a telemarketer is calling.[8] Indeed, one service notes that it can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[9]

21.     Telemarketers such as Defendant can also avoid TCPA violations by subscribing to commercially available services which insure that the number being called is up to date and associated with the correct contact. For example, companies such as Neustar Experian, Early Warning, Idiology, and Infutor advertise their ability to: (1) identify the current phone type: landline or wireless before they call, (2) verify in real-time the current owner of a phone number to avoid calling a recycled phone number, (3) update and append accurate address and phone information, and (4) identify active phone numbers.

22.     Despite industry guidelines, commercially available resources and the obvious lack of consent, Coca-Cola fails to take the necessary steps to insure that its autodialed and/or prerecorded calls are placed only to consenting recipients.

23.     Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after

---

[8] *See, e.g.*, http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[9] https://www.neustar.biz/services/tcpa-compliance

requests to stop (or communicating similar language). As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

<b>FACTS SPECIFIC TO PLAINTIFF YOSHONIS</b>

24.     On July 1, 2003, Plaintiff Yoshonis registered his cellphone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls.

25.     Within two weeks of July 14, 2016 Plaintiff received a series of pre-recorded autodialed calls on his cellular telephone from Defendant Coca-Cola. When Plaintiff answered the calls he heard a pre-recorded message about ordering Coca-Cola products.

26.     On July 14, 2016, Plaintiff received another pre-recorded autodialed call from the phone number 800-647-2653, which instructed Plaintiff to "Be ready for our call tomorrow to order Coca Cola products." This was a similar pre-recorded message to the ones he had previously received.

27.     On July 15, 2016 Plaintiff received a call from Defendant from the phone number 800-647-2653. A Coca-Cola agent told Plaintiff that she was "calling to get your order for Coca Cola." Plaintiff Yoshonis informed the caller he was not interested, that he never gave them permission to call him, and not to call him again.

28.     On July 28, 2016, despite having expressly informed Defendant that he did not wish to be called by them, Plaintiff again received another pre-recorded call from the phone number 800-647-2653 with the message "Be ready for our call tomorrow to order Coca-Cola products." There was no live person speaking on the other end, which signals that the call was placed with a pre-recorded voice and/or equipment that has the capacity to generate and dial numbers without intervention so as to be considered an automatic telephone dialing system.

29.     On July 29, 2016, Plaintiff received a live call from Defendant from the phone number 678-320-1700. The Coca-Cola agent told Plaintiff that he was "calling to get your order for Coca Cola." Plaintiff again informed the caller he was not interested, that he never gave them permission to call him, and not to call him again.

30.     On, August 16, 2016, Plaintiff received yet another unwanted call from Defendant from the phone number 248-807-8975 from a man who identified himself as a representative of Coca-Cola. Plaintiff told him to stop calling. This call on August 16, 2016 was made 31 days after Plaintiff informed Defendant to stop calling him back on July 15, 2016.

31.     Plaintiff does not have a relationship with Defendant, has never provided his consent to Defendant to call him, or requested that Defendant place calls to him or offer him its services. Simply put, Plaintiff has never provided any form of prior express written or oral consent to Defendant to place calls to him and has no business relationship with Defendant.

32.     Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

**CLASS ALLEGATIONS**

33.     **Class Allegations**: Plaintiff Yoshonis brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the three classes defined as follows:

> **Pre-Recorded Message Class**: All persons in the United States who (1) on or after four years prior to the filing of this action, (2) Defendant (or a third person acting on behalf of Defendant) called using a pre-recorded message, (3) on the person's cellular telephone, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellphone; (2) within any 12-month period (3) where the cellphone number

had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Stop Calling Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called on or after four years prior to the filing of this action, (2) using the same equipment that was used to call the Plaintiff, (3) after the Person had requested for the calls to stop.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the pleadings following class discovery regarding the supposed manner of consent and the equipment used to make the calls.

34.    **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

35.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant systematically made telephone calls to individuals

who did not previously provide Defendant and/or its agents with their

prior express consent to receive such phone calls;

(c)    Whether Defendant made the calls with the use of an ATDS;

(d)    Whether Defendant systematically made telephone calls to consumers

whose telephone numbers were registered with the National Do Not Call

Registry;

(e)    Whether members of the Class are entitled to treble damages based on the

willfulness of Defendant's conduct; and

(f)    Whether Defendant systematically made telephone calls to consumers

after they explicitly asked not to be called from Defendant.

(g)    Whether Defendant made calls to members of the Pre-recorded Stop Call

Class after they informed Defendant to stop calling them.

36.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

Classes. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful

conduct during transactions with Plaintiff and the Classes.

37.    **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Classes, and has retained counsel competent and experienced in

complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and

Defendant has no defenses unique to Plaintiff.

38.    **Policies Generally Applicable to the Classes**: This class action is appropriate for

certification because Defendant has acted or refused to act on grounds generally applicable to the

Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure

compatible standards of conduct toward the Class members, and making final injunctive relief

appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

39.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Pre-recorded Message Class)**

40.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-Recorded Message Class—without their prior express written consent—in an effort to sell Coca-Cola's products and services.

42.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

>        (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
>        (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

43.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-Recorded Message Class simultaneously and without human intervention.

44.     By making unsolicited telephone calls to Plaintiff and members of the Pre-Recorded Message Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

45.     To the extent that Defendant made calls for business purposes, such calls to cellphones still required prior express consent. Here there was none.

46.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-Recorded Message Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

47.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages

recoverable by Plaintiff and the other members of the Pre-Recorded Message Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the Do Not Call Registry Class)

48.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

50.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

51.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

52.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53.     Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in § 64.1200(d)(3).

54.     Defendant also violated § 64.1200(d) by, *inter alia*, failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any such internal do not call list, and by failing to record and honor do not call requests.

55.     Defendant made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

56.     Defendant violated § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

57.     Defendant also violated the regulations by making at least one additional call to persons whose numbers had been registered on the Do Not Call registry for more than 30 days more than 30 days after such persons had requested that the calls stop. As such, Defendant failed to honor stop requests within 30 days.

58.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

**THIRD CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq*.**
**(On behalf of Plaintiff and the Pre-Recorded Stop Call Class)**

59.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry class.

60.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded Stop Call Class on their cellular telephones in an effort to sell its products and services *after* the persons informed Coca-Cola that they no longer wished to receive calls from Coca-Cola.

62.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

63.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-recorded Stop Call Class simultaneously and without human intervention.

64.     By making unsolicited telephone calls to Plaintiff and members of the Pre-recorded Stop Call Class's cellular telephones *after* they requested to no longer receive calls,

Coca-Cola violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

65.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-recorded Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

66.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-recorded Stop Call Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Yoshonis, individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying the Classes as defined above, appointing Plaintiff Michael Yoshonis as the representative of the Classes and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4.     A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant used a pre-recorded voice, that Defendant failed to obtain prior express consent to call Plaintiff and the other Class members, that Defendant did not institute procedures that comply with the regulatory minimum standards for maintaining a list of persons who are registered on the National Do Not Call Registry and scrubbing those numbers from their dialing list, and that

Defendant acted wilfully;

5.      An award of reasonable attorneys' fees and costs; and

6.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**MICHAEL YOSHONIS**, individually and on behalf of all others similarly situated,

Dated: September 7, 2016

By: /s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Bradley J. Friedman, Esq.
Law Offices of Bradley J. Friedman, Esq.
30300 Northwestern Hwy, Suite 106
Farmington Hills, MI 48334

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman*
(Law@stefancoleman.com)
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*

*Motion for admission *pro hac vice* to be filed